In The
Court of Appeals
Sixth Appellate District of Texas at Texarkana

______________________________

No. 06-03-00238-CR
______________________________


STEPHEN RICHARD SPRADLING, Appellant
 
V.
 
THE STATE OF TEXAS, Appellee


                                              

On Appeal from the 252nd Judicial District Court
Jefferson County, Texas
Trial Court No. 86032


                                                 



Before Morriss, C.J., Ross and Carter, JJ.
Memorandum Opinion by Chief Justice Morriss


MEMORANDUM OPINION

            Stephen Richard Spradling appeals his nonjury, felony driving while intoxicated (DWI)
conviction and the resulting sentence of twelve years' imprisonment, asserting only that the evidence
was legally and factually insufficient to support his conviction. According to Spradling, a fifty-one-year-old admitted alcoholic and diabetic, the evidence shows, on the day of the offense, his erratic
driving, the smell of beer in the vehicle, and his failing the field sobriety tests all resulted from a
combination of low blood sugar, mechanical difficulties with the vehicle, personal physical
infirmities, a cellular telephone call, and an unfortunate incident spilling his open container of beer. 
We find the evidence legally and factually sufficient and affirm his conviction.
            When reviewing the evidence for legal insufficiency, we examine the relevant evidence in
the light most favorable to the verdict to determine whether any rational trier of fact could have
found the essential elements of the crime beyond a reasonable doubt. Johnson v. State, 23 S.W.3d
1, 7 (Tex. Crim. App. 2000). In reviewing the factual sufficiency of the evidence, we must
determine whether, considering all the evidence in a neutral light, the jury was rationally justified
in finding guilt beyond a reasonable doubt. Zuniga v. State, No. 539-02, 2004 Tex. Crim. App.
LEXIS 668, at *20 (Tex. Crim. App. Apr. 21, 2004). There are two ways in which we may find the
evidence to be factually insufficient. Id. First, if the evidence supporting the verdict, considered
alone, is too weak to support the jury's finding of guilt beyond a reasonable doubt, then we must find
the evidence insufficient. Id. Second, if—when we weigh the evidence supporting and contravening
the conviction—we conclude the contrary evidence is strong enough that the State could not have
met its burden of proof, we must find the evidence insufficient. Id. "Stated another way, evidence
supporting guilt can 'outweigh' the contrary proof and still be factually insufficient under a beyond-a-reasonable-doubt standard." Id. If the evidence is factually insufficient, then we must reverse the
judgment and remand for a new trial. Clewis v. State, 922 S.W.2d 126, 135 (Tex. Crim. App. 1996). 
So, we are called on to review the evidence.
            Spradling testified his driver's license is restricted, so he is "not supposed to be driving." On
the morning of the offense, Spradling testified, he had been waiting for Alvin Davis, one of his
parents' employees, to drive him to a doctor's appointment. When Davis did not appear at the
appointed hour, Spradling got into a family vehicle and drove himself to the appointment. Spradling
arrived safely at the doctor's office and was seen and treated by the doctor. Afterward, Spradling ran
some errands. While running errands, he drank part of a beer he had found in the vehicle he was
driving.


 
            Also according to Spradling's testimony, the vehicle he was driving lacked power steering,
which made driving difficult. Spradling also addressed the smell of beer in the vehicle and on his
person. As he was driving, he hit a dip in the road. The sudden jolt caused some boxes in the
vehicle to hit his open container of beer, spilling beer on Spradling and all over the truck. He also
testified that part of his erratic driving was the result of receiving a telephone call during the time
in question. Spradling then claimed his poor performance during the field sobriety tests was caused
by his weak ankles, new boots, and his diabetes.
            Randy Tomplait, a disinterested civilian witness, was in the car following Spradling shortly
before his arrest. According to his testimony, Tomplait saw Spradling stop his vehicle in the middle
of an intersection. Spradling then proceeded through the intersection, even though the light was red
for him. Tomplait next observed Spradling stop a little farther into the intersection at the next traffic
light, and then run into the curb several times, drive up onto a sidewalk, leave his lane of traffic,
drive into oncoming traffic, and run another red light. Out of concern, Tomplait called 9-1-1. 
            Officer David Reeves of the Port Neches Police Department was dispatched to the scene. 
According to his testimony, Reeves observed Spradling's vehicle being driven erratically. When he
stopped the vehicle and made contact with Spradling, Reeves smelled alcohol on Spradling's breath
and observed that Spradling had slurred speech and bloodshot eyes. Reeves also noted that
Spradling had urinated on himself. During field sobriety tests, Spradling displayed all six
intoxication indicators on the horizontal gaze nystagmus test, and made several mistakes during the
walk-and-turn and the one-legged stand tests. Based on these observations and his eight years of
experience in dealing with intoxicated persons, Reeves concluded Spradling had been operating a
motor vehicle while under the influence of alcohol.


 Later, at the jail, Spradling admitted that he had
been drinking, "that he knew he was drunk," and that it was his own fault.
            Spradling's physician, Dr. Steven Mazzola, testified about Spradling's recent hospitalization
for complications from diabetes and hepatitis, as well as the physical effects of diabetes. According
to Mazzola, Spradling had been prescribed Amaryl, Glucophage, Protonix, Lopid, and Ativan for
a variety of illnesses and medical conditions before being arrested December 7, 2001. Mazzola
described how a low blood sugar level can adversely impact the ability to control one's motor skills. 
If a person's blood sugar is too low, he or she might even experience dizziness, headaches, rapid
heartbeat, or confusion. Mazzola also testified that the normal range for a person's blood sugar level
is between 70 and 110, but that drinking alcohol would lower a person's blood sugar. Testing of
Spradling's blood sugar level approximately four hours after his arrest showed a level of 78. 
Apparently, there was no evidence of Spradlin's actual blood sugar level during the events at issue.
            Mark Lemley is the manager of Superior Tire & Service in Orange, Texas, and had inspected
the vehicle driven by Spradling on the day of his arrest. Lemley stated the vehicle driven by
Spradling needed front-end work and new tires. Ennis Franks also testified regarding his familiarity
with the condition of the vehicle driven by Spradling December 7, 2001. Franks described the truck
as being nearly "undriveable" because of a "messed up" front end that lacked power steering.             Spradling's mother, Margaret Spradling, also testified on her son's behalf. She had seen
Spradling between 7:30 a.m. and 8:00 a.m. December 7, 2001. She did not smell any type of
alcoholic beverage on his breath at that time. She also testified the truck driven by Spradling on the
day of his arrest was not in good working order. She also stated that, when Spradling's blood sugar
level falls below seventy, he "gets erratic feelings." And, as a diabetic herself, Margaret told the trial
court that a diabetic with low blood sugar can often exhibit symptoms similar to someone who is
"drunk," even though the diabetic is, in fact, not intoxicated. 
            Both Tomplait and Officer Reeves testified Spradling was driving erratically. During the
field sobriety tests, Spradling failed to touch heel-to-toe on any steps, stopped walking throughout
the test, stepped off the line, and had to use his arms for balance. The trial court also was able to
watch two videotapes taken immediately preceding and following Spradling's arrest for DWI. 
According to Reeves, Spradling had urinated on himself and admitted he was drunk. These latter
pieces of evidence suggest Spradling had lost the normal use of his mental and physical faculties as
a result of ingesting alcohol.
            Spradling contends the evidence is legally and factually insufficient to show he had lost the
normal use of his mental or physical faculties at the time he operated the motor vehicle. A person
commits the offense of DWI if he or she operates a motor vehicle in a public place while intoxicated. 
Tex. Pen. Code Ann. § 49.04 (Vernon 2003). As it relates to this case, the term "intoxicated"
means "not having the normal use of mental or physical faculties by reason of the introduction of
alcohol, a controlled substance, a drug, a dangerous drug, a combination of two or more of those
substances, or any other substance into the body."


 Tex. Pen. Code Ann. § 49.01(2)(A) (Vernon
2003).
            Though there is no evidence of Spradling's blood-alcohol level either at the time of the
offense or shortly thereafter, we believe a rational trier of fact could have concluded, beyond a
reasonable doubt, that Spradling was intoxicated at the time he was driving. Accordingly, we
conclude the evidence is legally sufficient to support the trial court's judgment.
            We also believe the evidence is factually sufficient. While there is evidence of Spradling's
diabetes and the possibility that his blood sugar may have been low at the time, and evidence
suggesting Spradling's erratic driving might have been attributable to mechanical problems, we do
not believe these would require the fact finder to discount the evidence suggesting Spradling was
intoxicated, especially in light of his own res gestae confession of guilt. Accordingly, we conclude
that—after reviewing all the evidence in a neutral light—the proof contrary to the trial court's
judgment is not so strong that the State could not have met its burden of proof in this case.
 
 
 
 
            For the foregoing reasons, we affirm the trial court's judgment.


                                                                                    Josh R. Morriss, III
                                                                                    Chief Justice

Date Submitted:          July 29, 2004
Date Decided:             November 4, 2004

Do Not Publish